## PEOPLE v. REISS.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

**1. FALSE PRETENSES—EVIDENCE—SUFFICIENCY.**

On a prosecution under Pen. Code, §§ 528, 531, for grand larceny, the evidence *held* sufficient to warrant a finding that defendant obtained a sum of money from prosecutor by representing himself to be another.

**2. SAME—EVIDENCE—ADMISSIBILITY.**

Where, on a prosecution under Pen. Code, §§ 528, 531, for grand larceny, it appeared that defendant obtained a sum of money from prosecutor by means of false representations, there was no error in refusing to permit prosecutor to testify on cross-examination as to his willingness to accept defendant's offer to restore the money obtained.

**3. SAME.**

On a prosecution for grand larceny under Pen. Code, §§ 528, 531, because of defendant having represented himself to be another, it was proper to permit such person to testify that he possessed cards bearing his name similar to the card used by defendants in making the representations.

**4. CRIMINAL LAW—INSTRUCTIONS—REASONABLE DOUBT.**

Under Code Cr. Proc. § 389, providing that in case of a "reasonable doubt" defendant is entitled to be acquitted, it was proper to refuse to charge that the jury must be convinced beyond a "doubt."

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1904-1922.]

Appeal from Trial Term.

Henry Reiss was convicted of grand larceny, and from the judgment of conviction, and from an order denying a new trial, he appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

George Gordon Battle, for appellant.
Robert S. Johnstone, for respondent.

McLAUGHLIN, J.   The defendant was convicted of the crime of grand larceny in the second degree, and sentenced to be imprisoned in State's Prison for a term of not less than four nor more than five years. The indictment contained four counts, charging him as follows:   (1) With grand larceny in the second degree, in having obtained by certain false pretenses set forth in the indictment the sum of $37 from one Toth; (2) with having obtained said sum from Toth by force; (3) with having obtained said sum from Toth by impersonating one Lederer; and (4) with receiving said sum from Toth by falsely asserting and pretending that he represented Lederer. The learned recorder in his charge to the jury withdrew from their consideration the third and fourth counts.

The judgment of conviction is attacked upon the ground that the evidence did not justify a finding that the defendant was guilty of the crime charged, that the court erred in the admission and exclusion of testimony, and that the charge to the jury was erroneous.

The testimony on the part of the people tended to show that the complaining witness, Toth, a native of Hungary, but who had resided in this country for some four years prior to March, 1905, was working at that time with four compatriots in the state of Pennsylvania. That towards the end of this month one of these Hungarians (Kovacs), in reply to a circular advertisement from Hugo Lederer's Bank of Exchange, wrote Lederer, of whom Toth knew through his custom of remitting funds through said bank, inclosing a money order for $25, $5 of which was for himself and the remainder for his four companions, asking that such amount be applied towards the purchase of tickets to be obtained for them from New York City to Oderburg, via Bremen or Hamburg.   That April 6th following the five Hungarians arrived in New York, and started out to find Lederer's.   They were accosted by one McGowan, an expressman, whom they informed of their desire. That McGowan collected their baggage checks and $1 a piece, wrote

Lederer's name on a slip of paper from his notebook, and put them in his wagon, instructing his brother Charles as to their destination. That, instead of being taken to Lederer's at No. 53 Avenue B, they were taken to defendant's office No. 53 Greenwich street, where they were met by a clerk named Adam. That when defendant appeared, Kovacs immediately asked him to identify himself, and to produce the letter previously written Lederer, but both Kovacs and Toth were satisfied with the reply that he had received the money, would apply it towards the purchase price of the tickets, and would show the letter to them when the office was opened at 9 o'clock. That as a further proof of his identity defendant exhibited a card bearing Lederer's name, which was attached to his clothing, and an envelope on which was Lederer's address, printed as they had been accustomed to see it through their previous correspondence with the bank. That the price of a ticket on a fast boat to Hamburg or Bremen, and thence to Oderburg, offered by Lederer, was $42, and the Hungarians thereupon paid $37 each, supposing this amount, with the $5 previously sent, would procure a ticket the way they desired to go. That Adam wrote out and delivered receipts for these payments. That the baggage did not arrive at defendant's place of business until 1 o'clock, and he then informed them they could not sail that day. That having remained at defendant's hotel all night, Kovacs and another of the party, named Janos, started out after breakfast, and by means of one of Lederer's envelopes, which Kovacs possessed, found Hugo Lederer's and stated the situation to Max Lederer. That a representative from the bank then went to see defendant, told him of the complaint of the Hungarians that he had represented himself to be Lederer, and asked what way and on what boat he intended to have them sail. That the defendant's reply was evasive, but he gave instructions for the men to be on hand the next morning at 9 o'clock. That upon their arriving at that time defendant went out and returned with tickets on the Prince Line, so-called, carrying them to Oderburg via Naples, a much longer route, and costing $29, instead of $42. That dissatisfaction with the tickets being expressed by the Hungarians, the defendant offered to return $30 to each, which they refused, demanding the $37 which they had paid him, and which he refused to return. That finally, apparently at the suggestion of Lederer's representative, they took the tickets which the defendant had purchased, and left.

In behalf of the defendant, McGowan testified that he understood the Hungarians to say they wanted to go to an "Hungarians' Agent's," though he could not swear in response to a question of the court that he had not written Hugo Lederer's name in his book at the time referred to in the testimony offered by the people. Defendant's other evidence, furnished in the main by himself, was to the effect that these men came to him in the usual manner of emigrants, and were informed by him that they could sail on that day on a boat via the desired route if their baggage arrived in time; that he telephoned McGowan to hurry the baggage along, but it did not get there in time; that there was a large sign bearing his name over the office, and that he did not represent himself to be Lederer, whose name was never mentioned until the day

following the emigrants' arrival, when he was informed of the remittance sent to Lederer, and that he then advised the men to go to Lederer's, and demand the return of the amount, as the ship on which they were to sail had been gone two days when they arrived at New York, following Lederer's direction; that the whole matter was a scheme, evidenced by the attempted coercion on the part of Lederer's representative when he demanded $25 from defendant for his own private gain, failing to receive which he took the emigrants away.

The foregoing is but a brief summary of the testimony offered by the people and the defendant. It is sufficient to say, however, that at the close of the trial a clear question of fact was presented as to whether or not the defendant obtained $37 from the complaining witness by falsely representing himself to be Hugo Lederer. The jury resolved this question in favor of the people, and there is an abundance of evidence to sustain the finding. Such finding established that the defendant was guilty of larceny (subdivision 1, § 528, Pen. Code), and the amount of money taken being more than $25 made it grand larceny in the second degree (subdivision 1, § 531, Pen. Code).

The judgment of conviction, therefore, must be affirmed unless errors were committed in the other respects alleged. The appellant's contention that Toth should have been allowed on cross-examination to testify in regard to the willingness of his companions and himself to accept the $30 in place of the ticket when first offered by the defendant has no force, as their state of mind at that time, after they had parted with their money, had no bearing on defendant's previous action. He could not fraudulently obtain from them their money, and then when trouble arose over the transactions clear himself by offering to return either part or all of the money taken. His guilt or innocence depended upon the original transaction, and not what thereafter took place.

Nor did the court err in sustaining the objection to the question put to Toth on cross-examination as to who had been paying his board at the lodging house where he was stopping. The inquiry related to an immaterial subject, and in no way bore upon the credibility of the witness, and if for any reason it could be urged that this testimony should have been admitted it was cured, as appears by the charge, to which no exception was taken, to the effect that evidence had been received bearing on that subject, which the jury might take into consideration in determining the credibility of the witnesses offered by the people. At most, it was a mere technical error, which could not have done the defendant any harm.

The ruling admitting Kovacs' letter to Lederer, in which was inclosed the money order referred to, was proper under the restrictions imposed. The same may be said of allowing Lederer to testify that he possessed cards similar to the one described by the people's witnesses as having been worn by defendant.

Finally, it is urged that the court erred in refusing to charge at defendant's request that the jury must be convinced beyond a doubt that defendant intended to appropriate the money to his own use. The court did not err in refusing to instruct the jury as requested; on the

contrary, he would have erred had he done so. There was no obligation resting upon the people to present evidence that would satisfy the jury that the defendant was guilty beyond a doubt, but only beyond a reasonable doubt. Section 389, Code Cr. Proc.

The judgment of conviction is right, and it and the order denying a motion for a new trial should be affirmed. All concur.